# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMAR BROWN,  )
      Plaintiff,  )  Civil Action No. 14-109Erie
        )
v.  )  Magistrate Judge Baxter
        )
FOX, et al,  )
      Defendants.  )

## MEMORANDUM OPINION[1]

M.J. Susan Paradise Baxter

    Plaintiff, currently a state prisoner at SCI Albion, filed this action in the Erie County Court of Common Pleas. Thereafter, the action was removed from the Court of Common Pleas to this Court by Defendants.

    Presently before this Court is Defendants' partial motion for summary judgment. ECF No. 103. Defendants move for summary judgment on the following claims:

- State tort assault and battery claim against Fox and Marendo relating to an April 9, 2013, incident;

- Retaliation claim against Fox and Marendo based upon a "campaign of harassment" after Plaintiff filed grievances about the April 9, 2013, incident;

- Eighth Amendment claim based upon limited food portions while Plaintiff was housed in a Psychiatric Observation Cell for five days;

- First Amendment or due process claim against Dunmire arising out of the alleged denial of a grievance form; and

- State tort/negligence claim against Streichart for the loss of two photo albums.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

1

ECF No. 104.[2]

Although Plaintiff was permitted an opportunity to file a brief in opposition to the motion for summary judgment, he failed to do so.

I.   **Standards of Review**

A.   *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

---

[2] Defendants do not move for summary judgment on the remaining two claims of: excessive force against Fox and Marendo arising out of the April 9, 2013 incident, and retaliation against O'Brien for placement in the hard cell. Trial will be scheduled on these two claims.

### B. Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, quoting Fed.R.Civ.P. 56. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Slagle v. Cnty. of Clarion, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## II. The Prison Litigation Reform Act

### A. The Exhaustion Requirement

Defendants argue that they are entitled to summary judgment on some of Plaintiff's claims based on the failure to exhaust administrative remedies in accordance with the requirement of the Prison Litigation Reform Act. The PLRA, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[4] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("'[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006)

5

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

---

("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

### B. The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### C. Plaintiff's utilization of the administrative remedy process

*Retaliation claim against Fox and Marendo based on the "campaign of harassment" after Plaintiff filed a grievance about the April 9, 2013, incident*

This retaliation claim is based on the following factual allegations: Plaintiff alleges that on the morning of April 9, 2013, Defendants Fox and Marendo assaulted him by slamming his face and head into a metal fence and/or door. Following the assault, Plaintiff was taken to the RHU and on June 7th he was released from RHU. Since his release from the RHU, Plaintiff alleges that Fox and Marendo have created a "campaign of harassment" against him in retaliation for filing grievances about the April 9th incident. ECF No. 12, at ¶ 57. In this regard, Plaintiff provides factual details of three incidents:

- On June 10th, Fox verbally harassed him in Chow Hall (id. at ¶¶ 34-39);

7

- On June 30th, Marendo verbally harassed him near the Zone 1 gate (id. at ¶¶ 43-45); and

- On September 8th, Fox attempted to antagonize him on the track (id. at ¶¶ 54-57). [5]

The evidence before this Court reflects that while Plaintiff did file a grievance (#463452) about Fox's verbal harassment on June 10th, Plaintiff did not properly exhaust this grievance through the final level of review and it was dismissed as untimely. See ECF No. 105-5 at ¶¶ 10-11. Moreover, Plaintiff never filed a grievance about Marendo's actions on June 30th. Id. at ¶ 19. Plaintiff has not provided any evidence to the contrary as he must in order to defeat a well-supported motion for summary judgment. See Celotex, 477 U.S. at 322. Accordingly, summary judgment will be granted in favor of Defendants on this claim.

*Eighth Amendment claim based upon limited food portions
in the POC cell over a five day period*

Plaintiff alleges that he received nutritionally inadequate meals during his five-day stay in a Psychiatric Observation Cell. ECF No. 12, ¶¶ 73-80. The evidence before this Court reflects that Plaintiff did not file any grievance related to this claim. ECF No. 105-5, ¶ 21. Plaintiff has not pointed to any evidence to the contrary. Summary judgment will be granted in favor of Defendants on this claim.

---

[5] Defendants do not provide any evidence as to whether Plaintiff filed a grievance about the September 8th incident with Fox. However, Plaintiff's factual allegations as to this incident fail to state a claim as a single incident of verbal harassment cannot base a retaliation claim. It is well settled that verbal threats or verbal harassment do not constitute adverse action for purposes of stating a retaliation claim. Burgos v. Canino, 358 Fed.App'x 302, 306 (3d Cir. 2009) ("[B]ecause threats alone do not constitute retaliation, the claim relating to the threat failed"); Bartelli v. Lewis, 2005 WL 2406048, at *2 (M.D. Pa. Sept.29, 2005) ("we determine that verbal threats do not constitute an adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim").

8

*Loss of photo albums against Streichart*

Plaintiff alleges that due to the negligence of Streichart and a John Doe Correctional Officer, two personal photo albums were lost, depriving him of his property. ECF No. 12, at ¶¶ 81-89.

The evidence before this Court demonstrates that although Plaintiff filed an initial grievance (#466778) on this claim, he did not properly exhaust as his appeal was dismissed as untimely. ECF No. 105-5, ¶¶ 11-16. Plaintiff has not provided any evidence to the contrary. Summary judgment will be granted in favor of Defendants on this claim. As this is the only claim against Streichart, he will be dismissed as a party to this action.

### III. Denial of Grievance Forms against Defendant Dunmire

Plaintiff alleges that in April of 2013, Defendant Dunmire did not give him grievance forms in order to report the physical abuse by staff members. ECF No. 12, at ¶ 72. Plaintiff claims that this conduct violated his right to freedom of speech and right to redress of grievances under the First Amendment and due process under the Fourteenth Amendment. Id. at ¶ 100.

Judgment will be granted in favor of Defendant Dunmire on this claim as there is no constitutional right for an inmate to receive grievance forms. See Ashford v. Hawkinberry, 2016 WL 3156483, at *6 (W.D. Pa. Jun. 2, 2016) ("[I]t is well-established that inmates do not have a constitutionally protected right to a prison grievance system. Therefore, even if Defendants 'denied Plaintiff the grievance process or obstructed the grievance procedure, [that,] by itself, simply does not give rise to a cognizable independent claim.'"); Freeman v. Department of Corrections, 447 Fed.App'x 385, 387 (3d Cir. 2011). As this is the only claim against Defendant Dunmire, he will be dismissed from this action.

**IV.     Sovereign Immunity**

Finally, Defendants move for summary judgment on Plaintiff's state law claim of assault and battery arguing that the claim is barred by sovereign immunity.

Plaintiff alleges that Fox and Marendo assaulted him on April 9, 2013, as they escorted him to the Medical Department after they broke up an altercation between Plaintiff and another inmate. ECF No. 12, ¶ 12, et seq.

Defendants argue that Fox and Marendo, as "Commonwealth Defendants," are an arm of the Commonwealth for Eleventh Amendment purposes, and are entitled to the protection afforded by the doctrine of sovereign immunity for the state law claims.[6] They argue that the state law claims of assault and battery must be dismissed.

The Pennsylvania General Assembly has reaffirmed by statute the sovereign immunity of the Commonwealth and its agencies and employees. 42 Pa.C.S.A. § 8522(b). "[S]overeign immunity... applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.' " Larsen v. State Employees' Ret. System, 553 F.Supp.2d 403, 420 (M.D. Pa. 2008). See also Becker v. Godboldte, 2011 WL 2015213, at (9 (M.D. Pa. May 24, 2011) ("Plaintiff's state law claims do not escape the application of sovereign immunity simply because Defendant was sued in his individual capacity.").

---

[6] Pennsylvania waives sovereign immunity for conduct in nine specific instances, none of which applies here: (1) vehicle liability (2) medical-professional liability (3) care, custody or control of personal property ( 4) Commonwealth real estate, highways and sidewalks ( 5) potholes and other dangerous conditions (6) care, custody or control of animals (7) liquor store sales (8) National Guard activities, and (9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(b) (2016). None of these exceptions apply to Plaintiff's claims.

In order to determine whether a Commonwealth employee is protected from liability, a court must "consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity." Brautigam v. Fraley, 684 F.Supp. 2d 589, 593 (M.D. Pa. 2010). When determining if conduct is within the scope of an employee's duties, courts look to see "if [the conduct] is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer." Velykis v. Shannon, 2006 WL 3098025, at *3 (M.D. Pa. Oct. 30, 2006). Sovereign immunity extends to claims against employee defendants in Commonwealth agencies in their individual capacities as well. Mitchell v. Luckenbill, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010). Moreover, "[w]illful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability even for intentional torts. Stone v. Felsman, 2011 WL 5320728, at *11 (M.D. Pa. Nov. 1, 2011) (holding state trooper defendants were entitled to summary judgment on plaintiff's state law claims for assault, battery, false arrest, false imprisonment and malicious prosecution.).

Here, Defendants Fox and Marendo were acting within the scope of their employment during the events of which Plaintiff complains. Accordingly, they are protected by sovereign immunity and judgment will be entered in their favor on the claim for assault and battery.

### V. Defendants Lt. John Doe and John Doe 2

Pursuant to the authority granted to courts in the PLRA[7], Plaintiff's claims against these two unnamed Defendants will be dismissed because Plaintiff has failed to identify and serve said Defendants within ninety days in accordance with the requirements of Rule 4(m) of the Federal Rules of Civil Procedure.

These unnamed John Doe Defendants have never been properly identified or served in this case, nor have either of them had an attorney enter an appearance on his or her behalf. The latest date on which one or both were named as Defendant(s) in this case was August 14, 2014, the date on which Plaintiff's Amended Complaint was filed. Almost three years have passed since that time. As a result, these unnamed Defendants will be dismissed from this case pursuant

---

[7] The Prison Litigation Reform Act provides that: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Under § 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. § § 1915A, 1915(e), and 42 U.S.C. § 1997e(c), district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted."). The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2). Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Tucker v. Angelone, 954 F.Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. § § 1915A, 1915(e), and 42 U.S.C. § 1997e(c), the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted' ").

to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within ninety days of the latest date on which they were named as Defendants in this case.

An appropriate Order follows.